FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 20, 2022

SEAN F. McAVOY, CLERK

AUSA: CAB

County: Spokane

*In Re Affidavit in Support of Criminal Complaint as to Christopher Gooch and Christopher Jones.*

| | |
|---|---|
| STATE OF WASHINGTON | ) |
| | :ss |
| County of Spokane | ) |

## AFFIDAVIT

I, Jared P Tomaso, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.  This affidavit is in support of a criminal complaint as to Christopher Bruce Gooch ("GOOCH") and Christopher Allen Jones ("JONES"), charging each with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a).

2.  I am employed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") as a Special Agent ("SA") and have been so employed since March 2018. I am currently assigned to the Spokane Field Office. As an ATF SA, my duties include the investigation of violations of federal firearms laws. Prior to my employment with ATF, I was employed for two years as a Deportation Officer for the United States Immigration and Customs Enforcement, and eight years as a United States Border Patrol agent. I am fluent in the Spanish language (reading and writing).

Affidavit of SA Tomaso (22-mj-00336-JAG) - Page **1** of **9**

3.      During my law enforcement career, I have made hundreds of arrests for both state and federal violations and participated in hundreds of investigations involving felonious crimes.  I have received specialized training at the Federal Law Enforcement Training Center ("FLETC") in Artesia, NM, FLETC in Glynco, GA, and the ATF National Academy.  I have consulted with Senior Special Agents in the ATF, who have years of experience in working firearms-related investigations.

4.      I have also attended Firearms Interstate Nexus Training at the ATF, Firearms and Ammunition Technology Division in Martinsburg, West Virginia, where I have built upon my knowledge of firearm and ammunition identification and origin, as well as how to apply that knowledge to establish elements related to violations of federal firearms laws.  As a federal law enforcement officer, I have handled and examined hundreds of firearms in order to determine their classification under the law, and their origin of manufacture, to determine if they have traveled in, or affected interstate or foreign commerce.  I have consulted with and learned from many Senior SAs in the ATF, who have years of experience in working with firearms.

5.      As a result of my training and experience, I am aware that 18 U.S.C. § 1951(a) prohibits the interference with commerce by robbery.  I am also aware of the United States Supreme Court case of *Taylor v. United States*, 579 U.S. 301, 310 (2016), which determined, "prosecution in a Hobbs Act robbery case satisfies

Affidavit of SA Tomaso (22-mj-00336-JAG) - Page **2** of **9**

the Act's commerce element if it shows that the defendant robbed or attempted to rob a drug dealer or drug proceeds".

6.     I have learned the below information based on my review of reports and conversations with other law enforcement officers.  This affidavit is not meant to include all facts known to me and other law enforcement officers about this investigation.  It is simply meant to sufficiently show there is probable cause for the issue of the criminal complaints and associated arrest warrants as to GOOCH and JONES.  All times are estimates and relayed conversations are intended to be relevant summaries (not transcripts).

## INVESTIGATION

7.     In summary, on August 3, 2022, the Spokane Police Department ("SPD") was called to the Oxford Suite Hotel in Spokane Valley, Washington in response to the report of an armed robbery that had just occurred.

8.     According to the SPD reports of this incident (2022-20134271), I learned the following:

    a.     On August 3, 2022, at approximately 12:45am, the Spokane County Sheriff's Office ("SCSO") received a 911 call from the Oxford Suite Hotel.  The caller stated a female guest was running down the hallway screaming that they were being robbed.  The caller

also advised that three suspects with masks left the scene in a "Econoline" van.

b.      The victims of the robbery were identified as Scott E. Banchero ("BANCHERO") and Jaime R. Taylor (a/k/a Jaime Morris) ("TAYLOR") who were guests of the hotel staying in room #327. BANCHERO and TAYLOR were persons of interest in an on-going drug trafficking investigation.

c.      In pursuit of the drug trafficking investigation, federal agents, to include Homeland Security Investigations ("HSI") SA Drew Rodman, were conducting undercover surveillance in the parking lot of the Oxford Suites, when BANCHERO arrived and checked in. SA Rodman observed BANCHERO loading luggage onto a bellhop cart and noted the particulars of certain items of baggage.

d.      Within 20-30 minutes of BANCHERO's arrival at Oxford Suites, SA Rodman observed what he identified to be a conversion van pull into the lot. The van stood out to SA Rodman because it pulled forward and backed up several times before coming to a stop. SA Rodman observed and noted the license plate.

e.      SA Rodman then observed a man exit the van and enter the hotel lobby. He believed the same man then went to the east-side

door of the hotel and opened it for two other male subjects from the van. The three males from the van were in the hotel for only a short time before SA Rodman observed them exiting out the east-side door of the hotel carrying several duffle bags. SA Rodman believed that the duffle bags were likely the same ones he observed BANCHERO loading onto the bellhop cart.

f.    The three male subjects quickly departed the hotel in the van. Agents who had been assisting in surveillance followed the van as it appeared BANCHERO may have just been robbed based on the totality of the circumstances.

g.    While they were following the van, officers heard over the radio that an armed robbery had just occurred at the Oxford suites. SPD and SCSO joined the follow and attempted to initiate a traffic stop. During this attempt, two suspects, subsequently identified as GOOCH and JONES, exited the van, and fled in the downtown Spokane area. They were apprehended and detained by SPD officers. JONES was carrying a duffle bag when detained by SPD officers.

h.    The driver of the van continued his flight until crashing the van nearby. The driver was later identified as Dominic Shears.

Affidavit of SA Tomaso (22-mj-00336-JAG) - Page **5** of **9**

      i.      TAYLOR was later interviewed by SPD and told officers that she had been with BANCHERO and he had rented a room for them around midnight (on 08/03/2022). TAYLOR stated that they had been in the room for a few minutes when someone knocked on the door. BANCHERO answered the door and two men pushed into the room, pointed a gun in their faces, and took several bags before running back out. TAYLOR identified one of the men as "Dom".

9.    According to the SPD reports, I learned that GOOCH was interviewed by SPD Detectives. In summary, GOOCH advised the Detectives during a post-*Miranda* statement:

    a. He (GOOCH) and JONES had been friends for more than 10 years and JONES had called GOOCH and asked for his help collecting a debt. Specifically, JONES asked GOOCH to "roll" with him and just look "tough". JONES picked GOOCH up at his (GOOCH's) house, and when he did, he had another male with him who GOOCH stated he did not know. The three of them drove to the Oxford Suits in the Spokane Valley.

    b. When they arrived at the hotel, the unknown male advised both GOOCH and JONES that he would enter the hotel and let them in a side door.

    c. After the unknown male let them in the hotel, all three men went to a room and knocked. The unknown male was armed with a black semi-automatic pistol at the time. When a female answered the door, JONES and the unknown male entered the room. GOOCH saw an older male in the room with the female. GOOCH went to grab the female and then realized he wanted out of the situation, so he decided to leave the hotel and went back to the van. Meanwhile, JONES and the unknown male went into the room and began grabbing things. When JONES and the unknown male came out to the van, they both were carrying items in their arms. They all left in the van and went west on I-90 towards Spokane.

    d. GOOCH stated that he told the unknown male to let him out of the van, but the unknown male responded by pointing a gun at him and telling him to "shut the fuck up". The unknown male eventually let GOOCH and JONES out of the van near 2nd and Spokane St. in Spokane.

10. BANCHERO was later arrested by ATF, SPD, and Drug Enforcement Administration ("DEA) related to the drug trafficking investigation. According to ATF SA Wihera, who was present, BANCHERO provided a post-*Miranda*

Affidavit of SA Tomaso (22-mj-00336-JAG) - Page **7** of **9**

statement, and in summary, advised that he (BANCHERO) was involved in drug trafficking and was robbed at the hotel. BANCHERO stated that before being robbed, "Dominic" had placed a large order of controlled substances with him (BANCHERO). "Dominic" knew where BANCHERO was staying. Sometime after the order was placed, three individuals, including "Dominic", showed up to the hotel room wearing "COVID masks", and one of the individuals was armed with a black handgun. BANCHERO stated that the "big guy" (not further specified / identified) had the handgun and said something to the effect of "you know what this is about." BANCHERO stated the "big guy" put the gun to BANCHERO's head and pushed him around with it. BANCHERO described it as being less aggressive than a "pistol whip", but still forceful. BANCHERO stated that the three men stole some personal items and approximately one kilogram of cocaine.

11.    I learned from SPD Detective McMurtrey that a search warrant was executed on the duffle bag JONES was holding when contacted by SPD (noted above). Det. McMurtrey advised that suspected controlled substances, to include methamphetamine (field-tested presumptive positive) and heroin were located in the bag.

## CONCLUSION

12. Based upon the information above and my knowledge and experience with this, and similar investigations, I respectfully request the Court find probable cause has been shown to believe that on or about August 3, 2022, GOOCH and JONES committed a Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), by robbing BANCHERO and TAYLOR of controlled substances, at gunpoint (*i.e.* via threat of physical force and without their consent), and such activities affected commerce (*i.e.* the robbery delayed, obstructed, or affected in any way or degree), as articulated by the Supreme Court in *Taylor* (noted above).

_____
Jared Tomaso
Special Agent, ATF

Sworn to telephonically and signed electronically on this 20th day of September, 2022.

_____
Honorable James Goeke
United States Magistrate Judge